**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**KELVIN CARO-PEREZ,**

**Plaintiff,** **CASE NO.:**

**v.**

**UNIVERSITY COMMUNITY HOSPITAL, INC. d/b/a ADVENTHEALTH TAMPA,**

**Defendant.**
______________________________________/

# COMPLAINT

Plaintiff, KELVIN CARO-PEREZ, by and through his undersigned counsel, hereby sues Defendant, UNIVERSITY COMMUNITY HOSPITAL, INC. d/b/a ADVENTHEALTH TAMPA, and states as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and § 1367, and the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADA"), 42 U.S.C. § 12101 et seq. Plaintiff's claims under the Florida Civil Rights Act, Chapter 760, Florida Statutes, arise from the same common nucleus of operative facts and are properly before this Court pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367.

2. Venue lies within the United States District Court for the Middle District of Florida, Tampa Division, because a substantial part of the events giving

rise to these claims occurred in this Judicial District and venue is therefore proper pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

3. Plaintiff, KELVIN CARO-PEREZ (hereinafter "Plaintiff"), is a resident of Hillsborough County, Florida.

4. Defendant, UNIVERSITY COMMUNITY HOSPITAL, INC. d/b/a ADVENTHEALTH TAMPA (hereinafter "Defendant"), is a corporation authorized to and doing business in this Judicial District, where it operates an acute-care hospital located at 3100 East Fletcher Avenue, Tampa, Florida 33613.

5. At all times material, Defendant employed the requisite number of employees and was an "employer" within the meaning of the ADA and the Florida Civil Rights Act.

**GENERAL ALLEGATIONS**

6. At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federally protected rights.

7. At all times material, Plaintiff was qualified to perform the essential functions of his job, with or without a reasonable accommodation, and performed within the legitimate expectations of his employer.

8. Plaintiff has retained the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

9. Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

10. On April 28, 2026, Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), which was assigned EEOC Charge No. 511-2026-03148, alleging disability discrimination, failure to accommodate, hostile work environment, and retaliation.

11. The EEOC issued a Notice of Right to Sue on November 7, 2026, and this Complaint is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

12. More than 180 days have elapsed since the filing of the Charge with the FCHR. Plaintiff has satisfied all conditions precedent to the institution of this action.

## FACTUAL ALLEGATIONS

13. Plaintiff began his employment with Defendant on November 4, 2024, as a Maintenance Technician III in the Engineering Service/Maintenance Department at AdventHealth Tampa.

14. Throughout his employment, Plaintiff reported to Maintenance Supervisor Alejandro Gonzalez, who reported to Manager of Facilities

Engineering Dallas Buck, who in turn reported to Administrative Director of Engineering John Crouch.

15. Plaintiff is an individual with a disability. He is immunocompromised following a liver transplant and is prescribed Prograf (tacrolimus), an immunosuppressive medication used to prevent organ rejection that significantly reduces his body's ability to fight infection. Plaintiff's condition substantially limits one or more major life activities and major bodily functions, including the operation of his immune system.

16. Plaintiff was qualified for his position. His 2025 competency assessment, signed by Manager Dallas Buck, confirmed that he met all performance requirements, and he received multiple employee recognition awards in 2025 and 2026. Plaintiff also holds HVAC licensure and EPA certification.

17. On July 11, 2025, Plaintiff's treating physician, Dr. Patricia Eseverri, issued a medical letter advising that, because of Plaintiff's immunocompromised condition, he should work in an environment that minimized his risk of infection and exposure to communicable diseases. Dr. Eseverri further documented that, due to his medically necessary immunosuppression, Plaintiff should not be assigned duties involving exposure to fecal matter, sewage, or other biological

waste, and should not handle, clean, or be in proximity to such biohazardous materials.

18. Plaintiff submitted his physician's letter to Supervisor Gonzalez for the purpose of requesting a reasonable accommodation for his disability. Rather than processing the letter through Defendant's ADA accommodation procedure or initiating any accommodation review, Gonzalez placed the letter in Plaintiff's personnel file.

19. Gonzalez also disclosed Plaintiff's private health information to department coordinators who had no legitimate need to know, a disclosure that was unnecessary for any operational purpose.

20. Despite having received and being aware of the physician's letter, Gonzalez continued to assign Plaintiff plumbing tasks that involved exposure to human waste. Gonzalez directed Plaintiff to repair multiple toilets in the Brandon Emergency Room and to remove and reinstall a toilet in the Women's Center in order to install a support bracket. These tasks exposed Plaintiff to human waste in direct contravention of his documented medical restriction.

21. Plaintiff was the only Maintenance Technician, outside of licensed plumbers, whom Gonzalez assigned to perform these waste-side plumbing tasks. Plaintiff repeatedly raised his medical restriction, his lack of specialized plumbing training, and his safety concerns, but his assignments were not modified.

22. On November 14, 2025, during an afternoon turnover meeting, Plaintiff declined a toilet-related assignment consistent with his medical restriction.

23. On November 18, 2025, Defendant issued Plaintiff a formal corrective action for refusing to complete the task assigned by his supervisor. This was the first corrective action of Plaintiff's employment. Plaintiff noted on the corrective action form that he disagreed with its contents.

24. On November 20, 2025, Plaintiff escalated his concerns to Human Resources Manager Caridad Corona, reporting that he had been assigned duties outside the scope of his role, pressured to perform tasks despite his stated medical and safety concerns, and singled out for assignments not given to others.

25. On December 4, 2025, Corona confirmed to Plaintiff that Gonzalez had been unaware of the ADA accommodation process and had filed Plaintiff's physician's letter in his personnel file rather than submitting it for review. Corona advised Plaintiff that he would need to initiate an accommodation request through Human Resources Shared Services, more than five months after he had first submitted his physician's letter to Gonzalez.

26. On or about this same period, Plaintiff submitted a formal written complaint to Human Resources regarding the disclosure of his private health information, the failure to process his accommodation request, and the resulting

hostile work environment, and requested that the corrective action be removed from his record. No corrective action was taken in response, and the write-up was not removed.

27. On December 10, 2025, Plaintiff initiated a formal accommodation request through Defendant's Accommodation Team and resubmitted his physician's documentation.

28. On December 19, 2025, the Accommodation Team informed Plaintiff that additional medical documentation was required and provided a Medical Information Form for completion by his physician.

29. On January 16, 2026, Plaintiff submitted the completed Medical Information Form, in which his physician stated that he could not work in environments involving exposure to fecal matter, sewage, or other biological waste, nor perform duties involving the handling, cleaning, or proximity to such materials.

30. Also on January 16, 2026, during an 8:00 a.m. meeting with Director John Crouch regarding his accommodation request, Plaintiff experienced tone and body language directed toward him that he perceived as aggressive and hostile.

31. On January 19, 2026, Plaintiff submitted additional medical documentation from the Tampa General Hospital Transplant Institute confirming

that, because of his liver transplant and immunocompromised condition, he should not come into contact with plumbing that involves bodily fluids.

32. On January 21, 2026, the Accommodation Team denied Plaintiff's accommodation request, taking the position that plumbing tasks involving exposure to bodily fluids were essential functions of the Maintenance Technician position, and advised that Plaintiff would instead be partnered with Internal Mobility to seek other positions.

33. Defendant denied Plaintiff's accommodation request without providing any alternative accommodation and without meaningfully engaging in the interactive process, notwithstanding that Plaintiff remained able to perform the duties of his position and other available positions with a reasonable accommodation.

34. On January 22, 2026, Plaintiff applied for two internal positions within his department, Senior HVAC, and Maintenance Supervisor, which he understood did not involve waste-side plumbing and for which he was qualified by virtue of his HVAC licensure and EPA certification.

35. On February 9, 2026, the day Plaintiff was scheduled to interview for the Senior HVAC position, Director Crouch informed Plaintiff by email that the position was being offered to another candidate.

36. On February 10, 2026, Plaintiff submitted a formal complaint to the Accommodation Team, asserting that steps in the ADA interactive process had been missed and that his case had been prematurely directed to Internal Mobility without coordination with his management team or Human Resources.

37. On February 11, 2026, Plaintiff sent a written communication to Director Crouch and Manager Buck, with Human Resources copied, addressing a comment attributed to Crouch suggesting that Plaintiff brought less value to the department because of his disability, and stating that the comment reflected discrimination against him.

38. On February 12, 2026, Defendant reaffirmed the denial of Plaintiff's accommodation request and placed Plaintiff into the Internal Mobility program, giving him forty-five (45) days to secure another position within AdventHealth. Effective February 16, 2026, Plaintiff was placed on unpaid administrative leave.

39. Between February 12, 2026 and the end of the Internal Mobility period, Plaintiff applied for numerous positions within AdventHealth. On March 4, 2026, Plaintiff submitted an updated physician's letter clarifying that, although he should avoid plumbing tasks involving bodily fluids, he was able to unclog toilets and repair valves and faucets. Plaintiff was not selected for any of the positions for which he applied.

40. Having not been placed in another position within the forty-five (45) day period, Plaintiff's employment was terminated effective April 4, 2026, as confirmed by Defendant's written notice.

41. Plaintiff's termination occurred within weeks after he requested a reasonable accommodation, opposed Defendant's disability discrimination, and complained of retaliation and the mishandling of his medical information.

42. Defendant's stated reason for terminating Plaintiff was pretextual. Defendant could have accommodated Plaintiff's documented restrictions, including by reassigning him to a vacant position or to duties that did not involve exposure to bodily fluids, but instead removed him from the workplace and terminated his employment.

43. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered loss of income, loss of employment benefits, emotional distress, humiliation, and other damages.

**COUNT I**
**DISABILITY DISCRIMINATION**
**(Under the Americans with Disabilities Act, as amended)**

44. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 43.

45. Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12112 et seq.

46. Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

47. Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended. Specifically, Plaintiff's condition substantially limited one or more major life activities and/or one or more major bodily functions, including the operation of his immune system.

48. Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of his job.

49. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of his known disability, and/or because Defendant regarded him as having a disability, and/or because of Plaintiff's record of having a disability, in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant terminated Plaintiff's employment.

50. The above-described acts of disability discrimination constitute a violation of the Americans with Disabilities Act, as amended, for which Defendant is liable.

51. Defendant's unlawful and discriminatory employment practices

toward Plaintiff were intentional.

52. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

53. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and all other relief deemed just and equitable.

## COUNT II
## AMERICANS WITH DISABILITIES ACT ("ADA")
## FAILURE TO ACCOMMODATE

54. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 43.

55. Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, and was an employee within the meaning of the Act.

56. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with a reasonable accommodation, could perform the essential functions of his job with Defendant.

57. By the conduct described above, Defendant engaged in unlawful employment practices in violation of the Americans with Disabilities Act, as amended, took adverse employment actions against Plaintiff, and discriminated against Plaintiff because of his disability. Further, Defendant denied Plaintiff a reasonable accommodation and failed to engage in the interactive process, in violation of the Act.

58. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and all other relief deemed just and equitable.

## COUNT III
## AMERICANS WITH DISABILITIES ACT ("ADA")
## RETALIATION

59. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 43.

60. Plaintiff engaged in protected activity under the Americans with Disabilities Act, as amended, including by requesting a reasonable accommodation for his disability and by opposing Defendant's discriminatory treatment of him.

61. Plaintiff suffered adverse employment actions, including the denial

of advancement opportunities, placement on unpaid administrative leave, and termination, because he engaged in the protected activity described above, which is unlawful pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12203(a).

62. The above-described acts constitute retaliation, in violation of the Americans with Disabilities Act, as amended.

63. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and all other relief deemed just and equitable.

## COUNT IV
## FLORIDA CIVIL RIGHTS ACT
## DISABILITY DISCRIMINATION

64. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 43.

65. Plaintiff is an individual entitled to protection under the Florida Civil Rights Act ("FCRA"), Chapter 760, *Florida Statutes*.

66. Plaintiff is an individual with a disability.

67. By the conduct described above, Defendant engaged in unlawful employment practices in violation of the FCRA, took adverse employment actions

against Plaintiff, and discriminated against Plaintiff because of his disability, record of a disability, and/or perceived disability.

68. Defendant failed to provide Plaintiff with a reasonable accommodation, which resulted in Plaintiff's termination on the basis of his disability, record of a disability, and/or perceived disability.

69. The above-described acts of disability discrimination constitute a violation of the FCRA, for which Defendant is liable.

70. Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

71. As a direct and proximate result of Defendant's violations of the FCRA, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and all other relief deemed just and equitable.

## COUNT V
## FLORIDA CIVIL RIGHTS ACT
## RETALIATION

72. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 43.

73. Plaintiff suffered adverse employment actions for opposing an employment practice made unlawful by Chapter 760, Florida Statutes.

Specifically, Plaintiff opposed disability discrimination in the workplace and requested a reasonable accommodation for his disability.

74. The above-described acts of retaliation constitute a violation of Chapter 760, Florida Statutes, for which Defendant is liable.

75. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and all other relief deemed just and equitable.

## DEMAND FOR JURY TRIAL

76. Plaintiff, KELVIN CARO-PEREZ, requests a jury trial on all issues so triable.

Respectfully submitted,

**FLORIN | GRAY**

*/s/ Troy E. Longman, II*
**TROY E. LONGMAN, II, ESQ.**
Florida Bar No.: 1031921
tlongman@floringray.com
**WOLFGANG M. FLORIN, ESQ.**
Florida Bar No.: 907804
wflorin@floringray.com
16524 Pointe Village Drive, Suite 100
Lutz, FL 33558
Telephone (727) 220-4000
Facsimile (727) 483-7942
*Trial Attorneys for Plaintiff*